# SENTENCING MEMORANDUM ON BEHALF OF RICHARD MELTZ

Docket No. S5 12-CR-847-04 (PGG)

Honorable Paul G. Gardephe

Sentence Date: July 23, 2014

### LIST OF EXHIBITS

Letter to the Court from Bonita Meltz.…………..……....…..………..…...Exhibit A

Letter to the Court from Danielle Wachs……..………….………....…….....…….Exhibit B

Letter to the Court from Kenneth Bordens.....……………………………..…… Exhibit C

Psychiatric and Risk Assessment by Richard Krueger, M.D. ……..…………........Exhibit D

Commendations and Awards……………………………………………………Exhibit E

Letter from Thomas Valerino ………………………………………………Exhibit F

Anger Management Certificate ………………………………………………Exhibit G

Letter from Richard Meltz ……………………………………………… Exhibit H

# I.   INTRODUCTION

This memorandum and attached exhibits are respectfully submitted for the Court's consideration prior to imposing sentence on Richard Meltz. Mr. Meltz was named in a two-count felony information charging him with two counts of violating 18 USC 371. The first charges that, from the spring of 2011 through January, 2013, Mr. Meltz and others—including his codefendants Asch and Van Hise--conspired to kidnap a specific woman. The second charges that from January 2013 through April 15, 2013, Mr. Meltz and others—again, including Asch and Van Hise--conspired to kidnap another female, who turned out to be an FBI agent working in an undercover capacity.

On January 16, 2014, Mr. Meltz appeared before Your Honor and pled guilty to both counts as charged, accepting responsibility for his role in the conspiracies. Mr. Meltz showed recognition of responsibility for the offenses as charged and provided timely notification of his intention to plead guilty. Mr. Meltz had never been convicted of a crime prior to January 16, 2014.

Essentially, Mr. Meltz was charged for participating in chats, emails and other discussions that began as fantasy and later ventured too close to reality. These highly disturbing and misogynistic discussions about kidnapping women and committing various violent acts against them went into specific detail about planning and preparation. Over the course of many years, Mr. Meltz met with Mr. Asch once or twice and, more recently, occasionally spoke with him and others on the phone to discuss their "plans." He also communicated with them via emails and instant messages. During one of those phone calls, Mr. Meltz advised Mr. Asch that he could purchase a Taser at a gun show, and suggested the location of one or more gun shows that might stock Tasers. Mr. Asch did, in fact, purchase a Taser at a gun show and, unbeknownst to Mr. Meltz, also gathered other supplies in preparation for an abduction. Finally, Mr. Meltz met

1

with an undercover agent to discuss planning immediately prior to his being arrested. Of course, at no time was any person actually kidnapped or tortured, but it is the government's position that the planning was real, and focused on real-world targets.

In pleading guilty, Mr. Meltz accepted responsibility for his actions, and we do not ask the Court to disregard that fact. The key question in Mr. Meltz's case, then, is how his actions differ from those described by this Court in Mr. Valle's case, "when the lies and the fantastical elements are stripped away, what is left are deeply disturbing misogynistic chats and emails written by an individual obsessed with imagining women he knows suffering horrific sex-related pain, terror and degradation…Despite the highly disturbing nature of Valle's deviant and depraved sexual interests, his chats and emails about these interests are not sufficient -- standing alone -- to make out the elements of conspiracy to commit kidnapping."  The first difference is obvious: Mr. Meltz admitted to conspiracy. The further differences are, we suggest, a matter of degree, rather than difference. In order for this Court to have accepted Mr. Meltz's guilty plea, it had to be satisfied that Mr. Meltz had the intent to assist others in carrying out actual kidnappings. Mr. Meltz's role itself was one of giving advice: drawing from both his many years as a police officer and his even longer tenure in the world of fantasy role-playing of this nature, Mr. Meltz was able to provide information on the best way to commit these crimes and to get away with them. Though he never went anywhere connected with a kidnapping, never obtained any equipment himself for use in the conspiracy, nor provided or secured a location to keep or kill the abductee, his guilt is based upon what he told the Court he intended the eventual outcome of this conspiracy to be: an actual abduction.

This intent seems to be in stark contrast to both the many years Mr. Meltz spent fantasizing about these subjects without taking action and the many years he worked in law enforcement; it is, nonetheless, what he admitted to.

Mr. Meltz has dedicated most of his life and career to public service as a police officer. His family describes him as a decent man and a loving father. His last position was as Chief of Police and Security Service at the Edith Nourse Rogers Memorial Veteran's Affairs Hospital in Massachusetts until he was terminated as a result of this case (for being AWOL due to his bail situation). Mr. Meltz is now before your Honor awaiting sentencing and knows that no matter what the Court decides, the life he planned with his devoted wife and loving children has been altered forever.

## II. PERSONAL AND PROFESSIONAL HISTORY OF RICHARD MELTZ

### A.  EARLY YEARS

Mr. Meltz was born on March 20, 1948 in Plainfield, New Jersey. He is one of three children born to Harold Meltz and Harriet Marcus. Harold Meltz, Mr. Meltz's father, died of a stroke at age 72 in December 1992. Harriet Meltz, Mr. Meltz's mother, died of cancer at age 66 in December 1986. Donald Meltz, Mr. Meltz's brother, is currently 69 years old and owns and operates a collection agency. He lives in Stanhope, New Jersey. David Meltz, Mr. Meltz's other brother, is 61 years old and is a retired school psychologist. David Meltz currently resides in Margate, New Jersey.

Mr. Meltz was raised by his parents in Linden, New Jersey and moved to Colonia, New Jersey at the age of 8. His father was employed in the laundry and dry cleaning business and his income did not meet all of the family's household needs. His mother was a homemaker until 1957 when she decided to work as a schoolteacher to assist in supporting the family. Growing up, until his early teenage years, Mr. Meltz's mother was physically abusive towards him. She hit him with her hand on several incidents. Otherwise, Mr. Meltz maintained a stable relationship with his family members.

In August 1964, Mr. Meltz met Bonita Rothman. They were married on June 14, 1970 in Springfield, New Jersey. Bonita Meltz is now 65 years old and works as a dental hygienist. The couple has two children. The older daughter is Danielle Wachs, who is 39 years old now and owns and operates a cake business in Boston, Massachusetts. Their second child is Michelle Auerback, who is 30 years old and a homemaker in Livingston, New Jersey. Mr. Meltz and Bonita Meltz are still married and Mrs. Meltz is still supportive of her husband.

## B.  EDUCATION

Mr. Meltz graduated from Bloomfield College in New Jersey in 1971 where he earned a Bachelor of Arts degree in history. He attended Bloomfield College from January 1967 to January 1971. Mr. Meltz obtained his high school diploma from Woodbridge High School at Samuel Lupo Place in Woodbridge, New Jersey. He attended from 1963 to 1966.

## C.  EMPLOYMENT

From January of 2013 to April of 2013, Mr. Meltz had been employed by the Edith Nourse Rogers Memorial Veteran's Affairs Hospital in Bedford, Massachusetts as the Chief of Police and Security Service. He was terminated for being AWOL as a result of this case. From February 2001 until January 2013, Mr. Meltz worked at the Veteran's Affairs Hospital in East Orange, New Jersey as a Deputy Chief of Police. He was assigned to both the East Orange Campus and the Lyons Campus in Lyons, New Jersey.

From January 1997 until February 2001, Mr. Meltz owned and operated Continental Investigation, Inc. based in Stanhope, New Jersey. This was a private investigator company which received referrals from law firms to investigate accidents and criminal matters. While operating Continental Investigation, Mr. Meltz also worked as an independent real estate broker in New Jersey. From November 1996 until February 1997 Mr. Meltz also worked as a subcontracted, private investigator for TKE Investigations in Sparta, New Jersey.

4

Prior to this Mr. Meltz worked as an undersheriff both in Flemington, New Jersey and in Stanhope, New Jersey. He was responsible for overseeing property foreclosure sales. He worked as an undersheriff from 1990 to 1996.

From 1978 until 1990, Mr. Meltz worked as a police officer for various police departments throughout New Jersey and New Hampshire. From 1978 to 1979 he worked for the Dover Police Department in Dover, New Hampshire. From 1979 to 1980 he worked for the Andover Township Police Department in Newton, New Jersey. From 1980 to 1981 Mr. Meltz worked for the Roxbury Township Police Department in Ledgewood, New Jersey. Then, from 1981 to 1990, he worked for the Byram Township Police Department in Stanhope, New Jersey, first as a police officer and then was promoted to sergeant.

During his career in public service, he received numerous commendations and awards.

### D. MENTAL HEALTH HISTORY

Mr. Meltz's mental health history began in 1988 when he suffered his first panic attack. He was prescribed Xanax. Thereafter, he suffered one or two panic attacks per year. In late 1991, he sought counseling to address anger and frustration stemming from his belief in his wife's infidelity. He attended weekly individual sessions for six to eight weeks with Dr. Seth Hirschfield, a psychologist whose office is in Newton, New Jersey. In early, 1992, Mr. Meltz and his wife attended eight sessions of marriage counseling with a psychologist in Sparta, New Jersey. Between 2002 and 2012, Mr. Meltz attended individual counseling with Dr. Philip Yucht, a psychologist whose office is in Hackettstown, New Jersey, because of his depression and boredom. He was prescribed Prozac and Xanax. Additionally, Mr. Meltz attended four counseling session with the MCC staff psychologist and was prescribed generic Prozac. Mr. Meltz plans on seeking counseling upon his release from custody. Furthermore, Mr. Meltz was evaluated by Dr. Richard B. Krueger, a diplomate in Psychiatry with the American Board of

Psychiatry and Neurology. Dr. Krueger's psychiatric and risk assessment of Mr. Meltz, attached hereto, concluded that according to five instruments used to assess risk, the likelihood of Mr. Meltz engaging in a crime or sexual crime again is very low. Additionally, Dr. Krueger emphasizes that post release restrictions, such as monitoring of Mr. Meltz's computer, polygraphy, and specific treatment, would help ensure that Mr. Meltz does not engage in such behavior again.

### E.  PRESENT CIRCUMSTANCES

Mr. Meltz's family is willing and able to provide him with the necessary support that he needs. They regard him as a dedicated police officer and a loving father. We have included letters from Mr. Meltz's relatives, providing a window into his dedication to his family and community.

Bonita Meltz, Mr. Meltz's wife for over 40 years, describes her husband as a caring and loving father. She writes the following:

> He has been a loving and giving father to our two daughters; attending school concerts, softball games, band competitions and all the school football games at which the March Band performed. He made sure we sent them to the best universities, although not always easy financially, he values education. …As long as I have known him, he has been a gentle, kind, and loving person. He took care of my every need during my recovery from rotator cuff surgery in 2012 as well as every year leading up to it. This has been the most difficult year of my life, without him. I miss him and love him very much.

> This past year has been extremely difficult for me physically and financially, having had to declare bankruptcy. I am working only 12 hours a week due to my medical issues- herniated discs and spinal stenosis. I feel as though I have been the victim of the action taken by the FBI against my husband. I believe he has learned much in prison about reality and humility. While Rick now clearly understands the extremely poor judgment he exercised in fantasy chat rooms, I truly believe that his man I have known for 49 years never would or could harm anyone. He has been my best friend for 49 years and I know him well. He is a good person who got mixed up in a world he had thought was imaginary. He knows his words were taken at face value and he will never head down that road again. I believe he can and will be committed to being helpful and good to everyone and be a useful part of society as he once was. Thank you for your consideration when deciding his sentence. I hope he will be returned to me in as short a time as is possible.

Danielle Wachs, Mr. Meltz's older daughter, wrote to the court describing how her father raised her properly. She wrote:

> My father has taught me a lot about life, simply through the way he has lived. In my nearly 40 years, my father's actions have been critical to molding the person I have become. Perhaps the most influential concept he imparted to me- through words and deeds alike- is that every life is precious and deserves our utmost respect. Dad always thanked every school bus driver and janitor, gave whatever pocket change he had to street musicians, and was sure to stop at every kid's lemonade stand to make a purchase. Dad valued all people. His good example was there at every turn, carried out without hesitation. Through my father, I learned to appreciate the contributions that all people make to the world around us.

Kenneth Bordens, Mr. Meltz's brother in law, wrote about Mr. Meltz's kindness:

> The crime that Richard has committed is completely out of character for the Richard Meltz that I have known for decades. During the time that I have known Richard I have always seen a helpful, funny, and caring person. He has been a devoted father to his two daughters, willing to sacrifice for them. For example, he and Bonnie took second mortgages on their home so that their daughters could attend the best colleges available. This despite the fact that they could have obtained good educations at New Jersey's state universities with far less financial burden to Richard and Bonnie. This example embodies Richard's general orientation toward parenthood and other relationships. I have always known him to put the welfare of his family and others ahead of his own needs. My impression of Richard is that if you needed it and he had it, you would get it.

Mr. Meltz was a dedicated public servant for nearly 40 years. His family explains how he wanted to become a police officer because he simply wanted to help others. Bonita Meltz wrote:

> As a police officer he was given many commendations for all his help to the public. Rick has risked his life for the citizens he protected. He received a commendation for pulling a man out of a burning car before it exploded. He invited his younger brother who was injured in a car accident to live with us for eight months, so he could properly car for him. He never refused a friend in need. His loyalty is a part of who he has always been. When he responded to an accident where a deer was hit on the road, he had to call for backup to put the deer out. He could not even shoot it to put it out of its misery.

Kenneth Bordens also wrote:

> For the better part of the last 40 years Richard has been a police officer. Several years ago I talked to Richard about his decision to go into law enforcement. He told me that the reason he chose that path was that he wanted to help others. He said that many police officers enjoyed using the power that went along with the badge. Richard, conversely, stressed the helping aspect of his role. He related to me a number of stories where he used reason and logic to calm a suspect rather than authority or force. I think his approach to law enforcement shows his general helping orientation toward other people.

## III. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. §3553(A)

Ultimately, we suggest that a sentence outside the guidelines, as per 18 U.S.C. §3553(a) is appropriate here. As the Court knows, the statute instructs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" as outlined below.   We respectfully suggest that the balance of all of these factors weigh in favor of a sentence of time-served, which would meet the sentencing goals of punishment and deterrence. Mr. Meltz, who has served his community for approximately forty years, would be an ideal candidate for a hefty sentence of community service, along with whatever community-based options the Court believes to be appropriate.

### *Nature of Offense and the history and characteristics of the defendant:*

Nothing herein suggests that the crime which has brought Mr. Meltz before this Court is not serious, nor do we intend to downplay that seriousness.  We ask only that it be viewed in context.  Mr. Meltz has always worked for a living.   He is a lifelong public servant and admirably climbed the ranks to Sergeant and Chief of Police.  During his memorable career he received numerous commendations for his hard work, including Special Contribution Awards from the Department of Veterans Affairs and invitations to guest speak at junior high schools throughout New Jersey to education students on the dangers of drug use and the strategies of avoiding peer pressure. We have enclosed for the Court's review several of these accolades along with letters of gratitude.

Understandably, the fact that Mr. Meltz was a law enforcement officer with a duty to uphold the law and protect people can cut both ways. However, an instance of—admittedly— extraordinarily bad judgment cannot undo the good works of forty years, or a lifetime.

Furthermore, we ask the Court to consider the analysis by Dr. Richard Krueger:

> Mr. Meltz has pled guilty to 2 counts of conspiring to kidnap women and to subject them to sadistic physical injury. This, of course, is an extremely serious crime with very significant risk to others. On the other hand, past behavior is the best predictor of future behavior and Mr. Meltz has, despite 30 years of expressing his sadistic sexual fantasies, had no prior crime or victim, which suggests that he stops short of inflicting damage on a victim. He is of advanced age, which is associated with a decreased risk of criminality. In my judgment he has learned from the educative effects of his arrest, incarceration, and the sentences that he is facing.

**The Need for Deterrence:**

To the extent that criminal sanctions do have a general deterrent effect, the certainty and swiftness of punishment have a far greater deterrent effect than the severity of the sanction. Mr. Meltz was swiftly arrested and his arrest received widespread attention in the local and national press. He has been incarcerated for over a year. His nationwide shaming has had a vast general deterrence effect on its own. Additionally, Mr. Meltz was terminated from the profession he dedicated his life to. Therefore, there is no reason to believe that a sentence of time served will be insufficient for the purposes of specific deterrence.

**To provide the defendant with … other correctional treatment in the most effective manner:**

On a separate note, we have attached a copy of the certificate that Mr. Meltz earned for completing the anger management course at the M.C.C. last year. He has also routinely spoken with the staff psychiatrist.

## IV. SENTENCING RECOMMEDATION

As noted above, we respectfully request a sentence of time served with a significant community service component and any of the community-based supervision methods the Court finds most appropriate. This will allow for appropriate punishment while allowing Mr. Meltz to remain close to his support network of family and friends, as well as his two daughters.[1]

---

[1] The Court will no doubt note that Mr. Meltz's younger daughter has not provided a letter. She has been conflicted about her relationship with her father for many years, long prior to this case, and chose not to participate.

Should the Court find that this suggestion is inappropriate, we respectfully ask the Court to consider a shorter sentence of incarceration, with the sentences on each count running concurrently.

## V.  CONCLUSION

As detailed extensively above, we believe that in this case our sentencing recommendation would provide an adequately onerous sentence that would be in keeping with and would not compromise the needs of justice: a sentence sufficient, but not greater than necessary.

As he says in his own extensive letter to the Court, which is attached, "I have spent my entire life saving people and being the barrier between people and evil only to surrender this thought and lifetime's work to evil." As he states, he plans to return to his family, to help support his wife however he can, and to live his remaining years trying to atone for his actions by being a better person than he was before this incident.

We would also ask the Court to consider the following words from his daughter, Danielle:

> I know my father still lives by the principals he taught me. I am confident he would never actively hurt another person. In all of his years, he never did. I strongly believe that he would never intentionally put another person in harm's way. I know that his fantasies were twisted and dark, but I believe they were an escape from his lifelong battle with depression and his nearly 40 years of police service. He spent four decades committed to his community, keeping us safe. Unfortunately, he did not give priority to attending his own mental health needs. The person so many knew and liked sometimes became lost in a fantasy.

> I want to have my father back in my life. I want my son to know his grandfather and know the good and kind man he truly is inside. I am ready to help my father, but I also recognize he has a lot of work to do- repairing relationships, atoning for sins, and most of all, being honest about his feelings and not retreating into the darkness. If he is able to receive the assistance, medical attention and counseling he needs at home, that healing can begin for all of us.

Finally, we would like to impart a story from Mr. Meltz's long career, this instance from when he worked as an Undersheriff in Sussex County. Part of his duties there involved supervision of the Sussex County Jail and its prisoners, though he was higher up in the

management of the Sussex County Sheriff's Department. At the time, Bonnie, Mr. Meltz's wife, ran a small store in Sussex County, and some money was stolen from the store. As it turned out, the individual who stole the money happened to be an inmate at the Sussex County Jail when law enforcement officers determined that he was the person responsible for the theft. These officers were going to the jail to serve the individual with some papers, and Mr. Meltz asked to go along. Of course, this confrontation between Mr. Meltz and the man who victimized his wife could have gone very badly. Instead, quite the opposite happened. Mr. Meltz showed great compassion, and took the time and made the effort to mentor the young man, Thomas Valerino, whose letter is attached. In part, he says, "You were the father I never had, at a time I needed you most, and for that I want to thank you from the bottom of my heart. YOU gave me "life"!"

It is this compassion that we now ask the Court to exercise in its sentence.


Respectfully submitted,


BRILL LEGAL GROUP, P.C.


_____

By:    Peter E. Brill (PB0818)
       15 Maiden Lane
       Suite 1500
       New York, NY 10038
       (212) 233-4141